[No. B036091. Second Dist., Div. Seven. Dec. 13, 1988.]

ARTHUR LAWRENCE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
OPPENHEIM, APPEL, DIXON & CO., Real Party in Interest.

## COUNSEL

Arthur Lawrence, Lorraine Howell, in pro. per., Rich & Ezer and Mitchell J. Ezer for Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

Patterson, Belknap, Webb & Tyler, Edward M. Rosenfeld and Roger M. Rosen for Real Party in Interest.

## OPINION

LILLIE, P. J.—Petitioners seek a writ of mandate directing the superior court to vacate its order denying petitioners' peremptory challenge pursuant to Code of Civil Procedure section 170.6, which denial was based on a finding that the challenge was untimely, and compelling the court to disqualify Judge Diane Wayne, assign a new judge to the case, and vacate all orders made by Judge Wayne after the filing of petitioners' peremptory challenge. We summarily denied the petition on July 27, 1988. The Supreme Court granted review on September 15 and directed us to issue an alternative writ. We issued an order and alternative writ, and oral argument has been had thereon. We conclude the peremptory challenge was untimely under Los Angeles County Superior Court's Trial Court Delay Reduction Act rules (Super. Ct. L. A. County Rules, ch. 11) Project Rule 1104.1. Accordingly, the petition for writ is denied.

## Procedural Background

Real party in interest brought an action against petitioners in 1985 for breach of contract and recovery on a promissory note. After being inactive for almost three years, real party served petitioners with a motion for summary judgment or alternatively for summary adjudication of issues on June 3, 1988,[1] which motion indicated a hearing date of July 8, 1988 in Department 20. At that time, Judge Diane Wayne was sitting in Department 20. By court order of October 15, 1987, the action had been assigned to Judge Wayne for all purposes pursuant to the Trial Court Delay Reduction Act of 1986 (Gov. Code, § 68600 et seq.). On July 5, 1988, three days before the hearing date, petitioners brought an ex parte application to continue the summary judgment motion, which application was apparently denied. Petitioners claim it was at this hearing that they received actual notice that Judge Wayne had been assigned to the case for all purposes pursuant to the Trial Court Delay Reduction Act of 1986. On July 7, 1988, petitioners lodged their peremptory challenge to Judge Wayne in Department 20 and filed notice of motion and motion to disqualify Judge Wayne pursuant to Code of Civil Procedure section 170.6. On July 8, the court ruled that "the challenge for cause pursuant to [Code of Civil Procedure section] 170.6 lodged with the court on 7-07-88 by defendant Lawrence is not timely and therefore is not accepted by the court." At that time the court also granted real party's motion for summary judgment.

Petitioners filed timely petition for writ of mandate. ■ Petitioners characterize the issue presented as "whether notice of assignment to a department is notice of assignment to a particular judge for purposes of peremptory challenge to the judge assigned pursuant to the Los Angeles County Superior Court Trial Delay Reduction Rules."

I

## Timeliness of Challenge

" 'Code of Civil Procedure section 170.6 provides in substance that any party to an action may make a motion, supported by an affidavit of prejudice, to disqualify the trial judge, commissioner, or referee. ■ If the motion is timely and properly filed, the judge must recuse himself without further proof and the cause must be reassigned to another judge. When an affidavit of prejudice has been timely filed, the judge's disqualification is automatic and mandatory. Once properly and timely challenged, the judge

---

[1] Real party claims the petition is incorrect and that the actual date of service of the motion is June 9, 1988. The difference in dates is not material to the issue presented in this writ.

loses jurisdiction to proceed and all his subsequent orders and judgments are void.'" (*Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 824 [209 Cal.Rptr. 844].) "Where the judge, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion [for peremptory challenge] shall be made at least five days before that date." (Code Civ. Proc., § 170.6, subd. (2).)

Under the local rules promulgated by the Los Angeles County Superior Court pursuant to the Trial Court Delay Reduction Act, "[a] motion asserting a challenge to an I/C [individual calendar or all-purpose] Judge under Code of Civil Procedure Section 170.6 must be made within 10 days after a party receives notice of the assignment of a case to such I/C Judge (see *Augustin* [*sic*] v. *Superior Court* (1986) 186 Cal.App.3d 1221, 1226-1229). With respect to Old Cases [cases filed in Central District on or before December 31, 1987], such notice will be deemed given by the Notice of Status Conference . . . or any notice of motion or demurrer filed by a party after the case has been assigned to an I/C Judge." (Project Rule 1104.1.)

■ There is a split of authority in the appellate courts as to whether an assignment to a particular department invokes the 10-day/5-day rule of section 170.6. Two decisions of the First District have held that, when there is a policy and practice of reassignment of motions, the assignment of a motion to a department is not an assignment to a known judge within the meaning of the 10-day/5-day rule of section 170.6. (*Bouchard* v. *Insona* (1980) 105 Cal.App.3d 768, 774 [164 Cal.Rptr. 505]; *Retes* v. *Superior Court* (1981) 122 Cal.App.3d 799, 806 [176 Cal.Rptr. 160].) It is this line of cases upon which petitioners rely in making their argument that, by analogy to the above cases, notice of assignment to a particular department is not notice of assignment to a particular judge so as to invoke the 10-day limit of Project Rule 1104.1. Petitioners also rely on *People* v. *Superior Court* (*Hall*) (1984) 160 Cal.App.3d 1081 [207 Cal.Rptr. 131]. This case, however, lends no support for their position because the court in that case *applied* the 10-day/5-day rule of section 170.6 to find a challenge timely when it was made more than 10 days before trial. (*Id.,* at pp. 1084, 1086.)

More recently, our Second District has disapproved of the *Bouchard* and *Retes* decisions as unwarranted departures from an earlier case, *People* v. *Roerman* (1961) 189 Cal.App.2d 150, 164-165 [10 Cal.Rptr. 870], which is still good law, and as imposing an unreasonable and wasteful burden on the superior court. (*Thomas Realty Co.* v. *Superior Court* (1988) 199 Cal.App.3d 91, 93, 95 [244 Cal.Rptr. 733].) As stated by the court in *Thomas Realty,* "the time limitations of section 170.6, subdivision (2), reflect a legislative accommodation of the conflicting needs of litigant and

court. The former wishes to postpone his challenge until he is fully informed, and the latter needs time to make adjustments after a disqualification. Subdivision (2) appears designed to require that the litigant make his challenge as soon as possible after he knows with some reasonable certainty which judge will hear a case. [Citation.] The *Bouchard* holding, rather than accommodate these interests, abandons the court's interest and capitulates to that of the litigant, by authorizing him, at the court's expense, to delay filing his challenge in hopes that a last-minute reassignment or illness may achieve the same result without necessitating use of the challenge. Our Supreme Court has remarked, apparently approvingly, that 'the courts of this state have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 197 . . . .)" (199 Cal.App.3d at p. 96.)

 Accordingly, the court in *Thomas Realty* held that "[i]f a matter is scheduled for hearing in an identified department and the name of the judge assigned to that department is known at least 10 days before the hearing, that judge may be disqualified only by a challenge filed at least 5 days before the hearing. If on the hearing date a judge other than the previously assigned judge is presiding, a party which has not exhausted its one challenge may exercise it against that judge not later than the commencement of the hearing." (199 Cal.App.3d 91, 95.) Under this holding, it is clear that the knowledge of assignment does not mean actual knowledge on the part of the party or his attorney but only that, upon further investigation or inquiry, the identity of the judge assigned to a particular department is ascertainable.[2]

 We believe the interpretation given section 170.6 by the court in *Thomas Realty* to be the correct one, and apply that case here. Pursuant to the holding in *Thomas Realty,* petitioners' challenge was untimely under the 10-day/5-day rule of Code of Civil Procedure section 170.6 because real party's motion for summary judgment was scheduled for hearing in Department 20 and it is clear from our record that Judge Wayne was assigned to that department. The fact that Judge Wayne was also assigned to the case as the I/C Judge is immaterial in determining the timeliness of the challenge under *Thomas Realty.*

We also conclude that the challenge was untimely pursuant to the terms of Project Rule 1104.1, which requires that challenge be made within 10

---

[2] The court in *Thomas Realty* seemed to imply that a party's actual knowledge of the identity of the judge was not dispositive because "[t]he notice of motion prominently showed it was set for hearing on December 18, 1987, in Department B of the North Central branch court in Burbank. If petitioner's counsel looked at the court directories published weekly in the local newspapers, he saw that two judges and one commissioner sit in the Burbank branch court; that Judge Murphy is one of the two judges; and that he sits in Department B." (199 Cal.App.3d at p. 96.)

days after a party receives notice of the assignment to an I/C Judge. With respect to "Old Cases," notice is deemed given by any notice of motion or demurrer filed by a party after the case has been assigned. Contrary to petitioners' assumption that the 10 days began to run upon their *actual* knowledge of the assignment of their case to Judge Wayne under the Trial Court Delay Reduction Act, the 10 days began to run upon their service with the notice of motion and motion for summary judgment. Thus, the rule clearly anticipates that notice of a motion to a department other than the usual law and motion department should be sufficient to alert a party not already aware of it to the Trial Court Delay Reduction Act and the local rules promulgated thereunder.[3] ▮ Although petitioners do not explicitly contend that Project Rule 1104.1 does not comport with due process, such argument arises by implication from their insistence that the 10 days runs from their actual notice of the assignment of the case to an I/C Judge. The response of respondent court to order to show cause and petition for writ of mandate does contend that Project Rule 1104.1 comports with due process and we agree with respondent.

▮ "Due process requires reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest. However, only a governmental decision that is adjudicative in nature—a decision involving the application of a rule to a specific set of facts—is subject to these procedural due process principles. A legislative action—the formulation of a rule to be applied in all future cases—is not burdened by such requirements." (*People* ex rel. *San Francisco Bay etc. Com.* v. *Gianulias* (1986) 188 Cal.App.3d 520, 528 [233 Cal.Rptr. 621]; see also *Oceanside Marina Towers Assn.* v. *Oceanside Community Development Com.* (1986) 187 Cal.App.3d 735, 744-747 [231 Cal.Rptr. 910].) An adjudicatory matter is one in which the government's action affecting an individual is determined by facts peculiar to the individual case; a legislative decision involves the adoption of a broad, generally applicable rule of conduct on the basis of general public policy. (*Id.,* at p. 745.)

▮ Local court policies and rules have been held to have the legal effect of procedural statutes, so long as they are not contrary to higher law. (*Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 504-505 [120 Cal.Rptr. 176].) In addition, the assignment of cases into the pilot project under the

---

[3] We must presume that the instant rules were adequately published and publicized pursuant to Government Code section 68612. That section provides in pertinent part that "[t]he judges selected in each county as judges of an exemplary delay reduction program shall, in consultation with the bar of the county to the maximum extent feasible, develop, and publish the procedures, standards, and policies which will be used in the program . . . and shall meet on a regular basis with the bar of the county in order to explain and publicize the program and the procedures, standards, and policies which shall govern cases assigned to the program."

Trial Court Delay Reduction Act and the adoption of rules to govern that project are acts that are more legislative than adjudicatory in nature and are thus exempt from due process requirements. ■ ■■■ As a practical matter, we also believe that all litigants should be held to a generally applicable procedural rule, whether or not they are aware of it.[4] As the peremptory challenge in the instant case was untimely under Project Rule 1104.1, the petition is denied.

## II

### COSTS AND ATTORNEY'S FEES

■ Relying on California Rules of Court, rule 26(a), real party seeks $10 in costs and $5,700 in attorney's fees (sanctions) incurred in filing opposition to the petition. Real party claims petitioners' brief was filed in bad faith and solely for purposes of delay because after the hearing on the motion for summary judgment, which was granted, petitioner Lawrence told real party's attorney that Lawrence would file every possible pleading, motion, writ, and appeal to delay real party's recovery of its award.

■ Although rule 26(a) provides for costs and sanctions on appeal, it does not provide for sanctions for filing a petition for writ of mandate solely for purposes of delay. We conclude, however, that Code of Civil Procedure section 907 is made applicable to writs of mandate by section 1109.[5] (See *Coast Sav. & Loan* v. *Black* (1986) 187 Cal.App.3d 1494, 1495, fn. 1 [232 Cal.Rptr. 483].) ■ Pursuant to the standards enunciated in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 648-651 [183 Cal.Rptr. 508, 646 P.2d 179], we do not deem this case appropriate for the imposition of sanctions or attorney's fees. Costs may be recovered by real party from petitioners pursuant to Code of Civil Procedure section 1032, subdivision (b).

### DISPOSITION

The alternative writ is discharged, and the petition for writ of mandate is denied. Real party's request for attorney's fees is denied. Real party is entitled to its costs on review.

---

[4] Division Two of our Second Appellate District has concluded that counsel have a professional responsibility to be aware of a duly adopted local court rule, including Project Rule 1104.4. (*Beverly Union Co.* v. *Superior Court, ante,* 40 at p. 43 [253 Cal.Rptr. 359].) Although petitioners herein are in propria persona, they are held to the same restrictive procedural rules as an attorney. (*Bistawros* v. *Greenberg* (1987) 189 Cal.App.3d 189, 193[234 Cal.Rptr. 377].)

[5] Section 907 provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Section 1109 provides, "Except as otherwise provided in this Title, the provisions of Part 2 of this Code [section 307 et seq.] are applicable to and constitute the rules of practice in the proceedings mentioned in this Title [Title 1, captioned Of Writs of Review, Mandate, and Prohibition]."

Woods (N. F.), J., concurred.

Johnson, J., concurred in the judgment.

Petitioners' application for review by the Supreme Court was denied February 23, 1989.