[No. C048750. Third Dist. Nov. 22, 2005.]

CHRISTOPHER J. OLSEN, Plaintiff, Cross-defendant and Respondent, v. JOSEPH F. HARBISON III, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Hinshaw & Culbertson, Ronald E. Mallen; and Sharon J. Arkin for Defendant, Cross-complainant and Appellant.

Freidberg & Parker and Edward Freidberg for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**SIMS, J.**—Joseph F. Harbison III appeals from an order denying his special motion under Code of Civil Procedure section 425.16 to strike causes of action arising from acts in furtherance of a person's constitutional right of petition or free speech, commonly known as an anti-SLAPP (strategic lawsuit against public participation) motion. (Further section references are to the Code of Civil Procedure unless otherwise specified.) An order denying such a motion is an appealable order. (§ 425.16, subd. (j).) Respondent Christopher J. Olsen moves for dismissal of the appeal as frivolous and taken solely for purposes of delay and requests an award of sanctions.

Section 425.16, subdivision (f), provides that an anti-SLAPP motion may be filed more than 60 days from service of the complaint only "in the court's discretion." The motion here was filed 278 days after service of the most recent complaint and was denied as untimely. Harbison contends the trial court abused its discretion in denying the motion.

We shall conclude that the appeal is frivolous because the claim of abuse of discretion indisputably has no merit. Consequently, we will dismiss the appeal and impose sanctions against Harbison.

## FACTS AND PROCEDURAL BACKGROUND

Olsen is an attorney who represented a plaintiff in an earlier personal injury case. When that case approached trial, Olsen associated Harbison, also an attorney, as cocounsel, under a contract to split the contingent attorney fees.

Soon thereafter the personal injury plaintiff discharged Olsen as counsel. The personal injury case was resolved by a settlement, and Harbison received attorney fees.

Harbison declined Olsen's demand for a portion of the fees to which Olsen claims he is entitled under the fee-splitting contract. On February 3, 2003, Olsen, in propria persona, filed a complaint initiating this action seeking to recover a portion of the fees under counts alleging breach of contract and quantum meruit. In April of 2003, Olsen amended the complaint to add counts alleging fraud and intentional interference with contractual relations. The amended complaint was served some time prior to August 14, 2003. In February of 2004, Olsen, now represented by the law firm of Friedberg & Parker, filed a second amended complaint, again with the additional counts alleging fraud and interference. This complaint was served by mail on February 13, 2004.

A spate of acrimonious law and motion proceedings ensued. For example, there was a motion to disqualify Edward Freidberg as opposing counsel,[1] an appeal of denial of that motion, a motion seeking a stay, a writ seeking to overturn the denial of the stay, demurrer proceedings, interrogatories, requests for production, requests for admissions, and cross motions to compel discovery or further discovery.

The stay efforts as to the motion to disqualify Freidberg were unsuccessful. The discovery disputes were resolved on November 1 and 5, 2004, by orders compelling further answers to interrogatories, production of documents, and depositions of Olsen and Harbison. The latter deposition was to commence on December 17, 2004. On November 3, 2004, Harbison filed a "renewed" motion to stay the proceedings pending resolution of the disqualification appeal. On November 23, 2004, the trial court issued a tentative ruling proposing to deny that stay motion.

That day (Nov. 23, 2004) Harbison filed combined motions: (1) for the court to exercise discretion to hear his anti-SLAPP motion, (2) to grant his anti-SLAPP motion on the merits, and (3) for judgment on the pleadings. In his view, the filing of the notice of motion resulted in an "automatic stay" of discovery.

---

[1] Harbison asked that we take judicial notice of proceedings in another case in which a challenge to Friedberg's participation was posed by a former client. Finding the matter irrelevant, we denied the motion.

On December 9, 2004, Olsen filed a motion to strike the anti-SLAPP motion on the grounds: (1) the motion could not be filed more than 60 days after service of the complaint without first obtaining an order so permitting, and (2) the motion was tendered solely for purposes of delay.

Harbison's opposition to the motion to strike replies as follows. There is no requirement for an order granting permission to file an anti-SLAPP motion more than 60 days after service of the complaint. There is no requirement of good cause for hearing such a belated anti-SLAPP motion. Nonetheless, the "explanation" for the delay is that it had not occurred to Harbison that the case was appropriate for an anti-SLAPP motion until he consulted with Counsel Ronald Mallen of Hinshaw & Culbertson. Then he waited to try to obtain permission from his malpractice insurance carrier, which had previously denied coverage, to retain Mallen. He did not retain Mallen until the carrier again refused coverage. After Mallen was retained, his firm prepared the anti-SLAPP motion. The motion was not filed to obtain delay, but in the belief it had merit.

These matters came on for hearing on December 30, 2004. After taking the matter under submission, the court issued a written order on January 5, 2005, denying Olsen's and Harbison's motions. In pertinent part the ruling is as follows. An anti-SLAPP motion filed more than 60 days after service of the complaint is not subject to a motion to strike. However, it can be heard only at the discretion of the court. The anti-SLAPP motion "is denied on the ground that it is dilatory, without good cause for failing to bring the motion earlier. Harbison filed such motion nine months after service of the Second Amended Complaint, asserting an inability to file earlier due to the failure of Harbison's then legal counsel (Harbison) to comprehend or consider the potential application of the SLAPP procedure to causes of action that had persisted in Olsen's complaint. Such explanation does not justify a delay of more than a year-and-a-half after the fraud and interference causes of action first appeared in the lawsuit. The SLAPP statute is intended to provide an aggrieved defendant with a shield through the prompt resolution of meritless claims prior to the significant expenditure of litigation resources, not a sword to be wielded whenever it becomes strategically convenient. The parties have already expended substantial resources in litigating all of the claims, including those addressed by the SLAPP motion. Harbison has compelled and obtained discovery from Olsen bearing directly upon the two target causes of action. In sum, the motion comes too late, without legitimate excuse."

On January 12, 2005, Harbison filed a notice of appeal from the order.[2] On August 5, 2005, Olsen filed this motion to dismiss the appeal as frivolous.

## DISCUSSION

Section 425.16, subdivision (f) (subdivision (f)), states in pertinent part: "The [anti-SLAPP] motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." The 60-day period commences with the service of the most recent complaint or amended complaint in the action. (E.g., *Lam v. Ngo* (2001) 91 Cal.App.4th 832, 835 [111 Cal.Rptr.2d 582], and authorities cited.)

Here, the second amended complaint was served on February 13, 2004. Harbison's anti-SLAPP motion was filed 278 days later, on November 23, 2004. Exercising its discretion, the trial court found the anti-SLAPP motion untimely.

■ Both the Legislature[3] and the Supreme Court[4] have acknowledged the ironic unintended consequence that anti-SLAPP procedures, enacted to curb abusive litigation, are also prone to abuse. As to abuse occasioned by the stay of proceedings on appeal of the denial of an anti-SLAPP motion, the Supreme Court has "encouraged" us "to resolve these . . . appeals as expeditiously as possible. To this end, reviewing courts should dismiss frivolous appeals as soon as practicable and do everything in their power to ' "prevent . . . frustration of the relief granted." ' " (*Varian Medical Systems,*

---

[2] Harbison notes that the opinion in *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 [25 Cal.Rptr.3d 298, 106 P.3d 958], holding that an appeal of the denial of a section 425.16 motion results in an automatic stay on appeal, was not issued until nearly two months after his appeal was taken. He submits this is evidence that he did not take the appeal to obtain a stay. However, *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179 [121 Cal.Rptr.2d 794], the only binding precedent pending the resolution of *Varian Medical Systems*, would have compelled the stay in any event.

[3] Section 425.17, enacted in 2003, commences: "The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16."

[4] In *Varian Medical Systems, Inc. v. Delfino, supra,* 35 Cal.4th 180, the Supreme Court stated: "In light of our holding [that an appeal from the denial of an anti-SLAPP motion automatically stays further trial court proceedings on the merits], some anti-SLAPP appeals will undoubtedly delay litigation even though the appeal is frivolous or insubstantial. As the Court of Appeal observed and plaintiffs contend, such a result may encourage defendants to 'misuse the [anti-SLAPP] motions to delay meritorious litigation or for other purely strategic purposes.' " (*Id.* at p. 195; see also *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1319 [9 Cal.Rptr.3d 844].)

*Inc. v. Delfino, supra,* at p. 196.) The question is whether this appeal is appropriate for such dismissal.[5]

■ *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] provides the standard. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Id.* at p. 650.)

Olsen contends the appeal is frivolous because there is ample reason to infer that Harbison's motive was to delay his deposition and there is no reasonable basis for him to have concluded he might be successful on appeal. Olsen notes that in order to succeed, Harbison would have to show the trial court abused its discretion in declining to hear the untimely anti-SLAPP motion. Olsen submits there is no basis in the record for a reasonable expectation of success in showing an abuse of discretion.[6]

In his opposition to the motion to dismiss, Harbison asserts that the trial court improperly exercised or failed to exercise the discretion accorded it by misinterpreting the anti-SLAPP statute. He argues his anti-SLAPP motion has merit, discovery in the case had not yet commenced, and granting the motion would have saved all concerned the time and expense of litigating the causes of action it addressed. Implicitly, in his view, an arguably meritorious claim of abuse of discretion lies in such a situation.

■ After we calendared the motion to dismiss and for sanctions, Harbison amplified his position as follows. The abuse of discretion standard is most difficult to overcome on appeal. Nonetheless, a reasonable attorney could conclude a claim of abuse of discretion is arguably meritorious in these circumstances. Subdivision (f) contains no express requirement of a showing of good cause to bring an anti-SLAPP motion after the 60-day period. Nor are there any express criteria for the exercise of the discretion it confers,

---

[5] Harbison submits that an appeal should never be dismissed if the motion to dismiss requires a consideration of its merits. He cites the "general rule" to that effect. (See, e.g., *Reed v. Norman* (1957) 48 Cal.2d 338, 342 [309 P.2d 809].) The general rule is grounded on policies of avoiding double work by this court and avoiding unwarranted advancement of the case on calendar. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 640–641, pp. 666–669.) The Supreme Court's admonition for dispatch in *Varian Medical Systems, Inc. v. Delfino, supra,* 35 Cal.4th 180, warrants an exception from the general rule here.

[6] Olsen asks that we take judicial notice of various papers filed in the trial court in this case and not included in the record on appeal. Harbison makes no objection. In the interest of judicial economy, the motion is granted. (Cal. Rules of Court, rule 41(c).)

except an admonition that the anti-SLAPP statute should be broadly construed to effect its purposes.[7] The published case law on subdivision (f) is scant and provides no guidelines for the exercise of the discretion conferred. Granting anti-SLAPP motions enhances judicial economy. Hence, a reasonable potential construction of the statute is it is an abuse of discretion to find a meritorious anti-SLAPP motion barred as untimely unless there is a showing of prejudice to the plaintiff. His motion had merit and there is no evidence of prejudice. Accordingly, in Harbison's view, the appeal cannot be found frivolous.

The contention fails for reasons that follow.

There are two ways to show an abuse of discretion by the trial court. One way is to show the ruling was whimsical, arbitrary, or capricious, i.e., that the trial court exceeded the bounds of reason. (E.g., *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) The other way is to show the trial court erred in acting on a mistaken view about the scope of its discretion. (E.g., *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298 [255 Cal.Rptr. 704].) Here that would require showing (1) the grounds given by the court for finding the anti-SLAPP motion untimely are inconsistent with the substantive law of section 425.16, or (2) the application to the facts of this case is outside the range of discretion conferred upon the trial court under that statute, read in light of its purposes and policy. (See *City of Sacramento v. Drew, supra,* at pp. 1297–1298.)

Harbison justifies his claim on appeal, in part, on the dearth of appellate case law construing the discretion provision in subdivision (f). He notes that the only case directly on point is *Morin v. Rosenthal* (2004) 122 Cal.App.4th 673 [19 Cal.Rptr.3d 149]. He fails to note that *Morin* was a case in which a *tenable* excuse for filing the motion six weeks late was tendered, the trial court rejected the excuse, and the Court of Appeal summarily rejected the appellate contention of abuse of discretion.

■ Harbison disavows the need for an excuse for late filing. In any event, his only claim of excuse for late filing is that he did not become aware of the application of the anti-SLAPP statute to the case until it was suggested by Attorney Mallen after Mallen was retained. A claim of excuse from untimeliness based on late discovery after obtaining new counsel is generally unavailing. (Cf., *In re Clark* (1993) 5 Cal.4th 750, 765 [21 Cal.Rptr.2d 509, 855 P.2d 729].) That is all the more so here, where Mallen became a counsel

---

[7] Harbison relies upon part of subdivision (a) of section 425.16: "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

of record some time before July 1, 2004, and the anti-SLAPP motion was delayed for approximately five months thereafter. This simply could not count as an excuse for failing to file within the 60-day period provided by the statute. To the extent the appeal is predicated on this ground, no reasonable attorney could conclude it might succeed.

This leaves Harbison's claim that a reasonable attorney could conclude there is a sound chance a court of appeal would uphold his claim that the trial court mistook the scope of its discretion. That is, in light of the purposes and policy of section 425.16, there is no discretion to deny a request for consideration of the merits of a belated claim on these facts. Stripped to its essence, his argument is a trial court has no discretion to deny hearing of an unexcused, belated, but meritorious anti-SLAPP motion unless the opponent satisfies a burden of showing "prejudice." This theory has no persuasive force.

An implicit premise in Harbison's argument is that the trial court must determine the merits of a belated anti-SLAPP motion in order to decide whether to hear its merits. Discretion to permit or deny an untimely motion cannot turn on the final determination of the merits of the motion. This is not to say that the trial court might not "peek" at the strength of the merits as a factor. However, in this case, it suffices to say that the merits of Harbison's motion are questionable rather than immediately compelling.

In any event, Harbison's argument also requires that the opponent of the motion show "prejudice." However, he offers no suggestion of what such a showing of "prejudice" might consist. He does imply that the passage of more than four times the period prescribed by the statute, replete with extensive expensive litigation proceedings, shows no cognizable "prejudice" at all.

■ Harbison suggests that his reading of section 425.16, subdivision (f) of the statute is tenable because of the admonition in section 425.16, subdivision (a) that the statute is to be construed broadly to "encourage continued participation in matters of public significance." The rule of broad or liberal construction is a rule for resolution of ambiguity with regard to a statute's text. (See *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1390 [129 Cal.Rptr.2d 892].) It is not a philosopher's stone that allows a court to supply any meaning favorable to the proponent of the anti-SLAPP motion. (See *ibid.*)

■ The statute expressly provides that a late anti-SLAPP motion shall not be filed unless the court affirmatively exercises discretion to permit it to be filed. Harbison's reading of the provision is that the court has *no* discretion,

unless the opponent shows some unexplained prejudice. This reading finds no support in the text of subdivision (f); from all that is made to appear, it would erase the provision. We therefore conclude a plaintiff opposing a late anti-SLAPP motion need not demonstrate prejudice.

There are two potential purposes of the 60-day limitation. One is to require presentation and resolution of the anti-SLAPP claim at the outset of the litigation before the parties have undertaken the expenses of litigation that begin to accrue after the pleading stage of the lawsuit. The other is to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings. The "prejudice" to the opponent pertinent to these purposes is that which attends having to suffer such expenses or be subjected to such a stay. There is ample evidence of both in this record. Thus, even assuming for the sake of argument that Harbison's reading of section 425.16 requiring a showing of prejudice had merit, it would be unavailing because adequate prejudice for Olsen appears on this record.

Harbison's remaining claim is that a reasonable attorney could nonetheless find arguable merit in his appeal because this court, in an unpublished decision, raised no question concerning a decision by a trial court to hear an anti-SLAPP motion filed 11 months after the complaint was filed. We see nothing favorable to Harbison in this.

That case could only concern the obverse scope of discretion to *grant* consideration of an untimely anti-SLAPP motion. However, no such issue was even posed. An unpublished decision that could not address the scope of discretion to deny an untimely anti-SLAPP motion and that did not address the scope of discretion to grant such a motion could not enhance the prospects for success of Harbison's claim on this appeal.

The objective standard, when any reasonable attorney would agree that the appeal is totally and completely without merit, is a judgment call. In our judgment, for the reasons already given, that standard has been met and the appeal should be dismissed. Harbison has made no colorable showing that the trial court's exercise of discretion in denying his untimely anti-SLAPP motion was whimsical, arbitrary, or capricious. (*Shamblin v. Brattain, supra*, 44 Cal.3d at p. 478.)

Olsen has moved for sanctions, and submits documentation of his attorney fees on this appeal, $16,727.50, costs of this appeal, $2,952, and his attorney fees, $38,112.50, for opposing the motion in the trial court. He also submits that this court should impose substantial fines, $14,448, on Harbison and each of his cocounsel on appeal on the ground that Harbison's conduct amounts to contempt of court as obstructive tactics to circumvent the trial court's discovery orders.

We are unwilling on this record to find that this appeal has been prosecuted for an improper motive, to harass the respondent or delay. It is beyond our purview to make such a judgment about the motives for the anti-SLAPP motion proceedings below. Accordingly, the only sanctions that we find appropriate are Olsen's attorney fees and cost of this appeal. We will order Harbison to pay to Olsen, as sanctions for a frivolous appeal, the sum of $16,727.50 and, as further sanctions, to pay to this court the sum of $2,500 to reimburse this court for the time and expense of processing the frivolous appeal. (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 458 [15 Cal.Rptr.3d 507]; *Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 312–313 [263 Cal.Rptr. 565].) This opinion shall constitute a statement of reasons for imposing the aforementioned sanctions.

As we have noted, Olsen also requests that we award him $38,112.50, representing his attorney fees incurred in the trial court. In part, he relies on section 425.16, subdivision (c) (§ 425.16(c)), which provides in pertinent part: "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

■ However, section 425.16(c) authorizes trial courts, not the Court of Appeal, to award fees. Thus, "[A] court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." (*Decker v. U.D. Registry, Inc., supra,* 105 Cal.App. 4th 1382, 1392.) Section 128.5, subdivision (a) provides in pertinent part, "*Every trial court* may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Italics added.) "[S]ection 128.5 pertains to *trial court proceedings* . . . ." (*Dana Commercial Credit Corp. v. Ferns & Ferns* (2001) 90 Cal.App.4th 142, 146 [108 Cal.Rptr.2d 278].) Assuming that Olsen requested an award of fees in the trial court pursuant to section 425.16(c), and was denied, his remedy was to file a cross-appeal, which he has not done.

Olsen also asks that we award him his trial court attorney fees as additional sanctions for the frivolous appeal. We decline the request, because to do so would undermine the policy of section 425.16(c), which calls for an exercise of discretion by the trial court in the first instance.

## DISPOSITION

The motion to dismiss the appeal is granted. As sanctions for a frivolous appeal, Harbison shall, within 15 days after the finality of this opinion, pay to Olsen the sum of $16,727.50 and to the clerk of this court the sum of $2,500. Olsen shall recover his costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 1, 2006, S139989. Chin, J., did not participate therein. Werdegar, J., was of the opinion that the petition should be granted.