Filed 10/4/22  In re T.G. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.G., et al., Persons Coming Under the Juvenile Court Law. | H048552 <br> (Santa Clara County Super. Ct. Nos. JD26564, JD026569, JD026570) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.G., <br><br> Defendant and Appellant. | |
| In re A.G., a Person Coming Under the Juvenile Court Law. | H048653 <br> (Santa Clara County Super. Ct. No. JD026580) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.G., <br><br> Defendant and Appellant. | |

| | |
|---|---|
| In re G.B., et al., Persons Coming Under the Juvenile Court Law. | H048772<br>(Santa Clara County Super. Ct. Nos. JD026578, JD026579) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.G.,<br><br>Defendant and Appellant. | |

Under the Uniform Parentage Act, a court may find that a child has more than two parents if "recognizing only two parents would be detrimental to the child." (Fam. Code, § 7612, subd. (c); undesignated statutory references are to this code.) In the absence of a third parent finding and in the event of competing parentage claims, the trial court will determine the child's legal parents based on statutory priorities and presumptions. (§ 7612, subds. (a), (b), (d).) Appellant challenges the juvenile court's denial of his request to be recognized as a third parent to his partner's children and his partner's request to be recognized as a third parent to his children. Citing section 7612, subdivision (b), he also argues the juvenile court failed to weigh his presumption of parentage as to his partner's children against that of their biological father.

As we will explain, appellant's first claim fails because we find no abuse of discretion in the juvenile court's denial of the requests for third parent recognition. Appellant's second claim fails because the parentage of the partner's children was conclusively determined by voluntary declarations of parentage, which have the force and effect of a parentage judgment. Under section 7612, subdivision (d), appellant's

2

presumption was conclusively rebutted by the biological father's parentage judgments. We will affirm.

## I. BACKGROUND

Appellant is the father of four children. At the time dependency proceedings were initiated in August 2020, he and the children had been living with E.H. (the mother of his youngest child) and E.H.'s two older children for about four years. (We refer to appellant's three older children as the "G children," and to E.H.'s two older children as the "B children.")

The Department filed petitions on behalf of the G children alleging jurisdiction under Welfare and Institutions Code section 300, subdivisions (a), (b), (c), (i), and (j). The Department alleged appellant struck 10-year-old E.G. with a belt; appellant was charged with child abuse and a criminal protective order was issued protecting E.H. from appellant; appellant physically disciplined the other G children in the home; E.H. did not intervene to stop the discipline; the G children were exposed to violence in the home; the G children's mother (K.R.) and her partner had physically abused the G children while in her care; and K.R. suffered from untreated substance abuse placing the children at risk in her care.

Petitions were also filed on behalf of the B children alleging jurisdiction under Welfare and Institutions Code section 300, subdivisions (b) and (c). The Department alleged the B children were endangered by violence in the home, and by their father's (M.B.'s) history of domestic violence and substance abuse.

A separate petition under Welfare and Institutions Code section 300, subdivisions (b), (c), and (j) was filed on behalf of A.G. (the child of appellant and E.H.) based on violence in the home.

At the initial hearings, the juvenile court found appellant to be the presumed father of the G children and M.B. to be the presumed father of the B children. E.G. was detained outside the home; the other G children remained in appellant's care; the B

3

children remained in the care of E.H.; and A.G. remained in the care of her biological parents, appellant and E.H. K.R. reported that she and the older G children were registered members of the Navajo Nation, and the court ordered that notice of proceedings be given to the tribe under the Indian Child Welfare Act (ICWA). M.B. did not attend the initial hearing for the B children or otherwise participate in the dependency proceedings.

Appellant and E.H. made simultaneous requests to be recognized as a third parent to the other's children under section 7612, subdivision (c), and the matters were set for a parentage hearing. The five children and their guardian ad litem supported the requests. E.H.'s request was opposed by K.R. but supported by the Navajo Nation. The Department took no position on either request. The juvenile court received testimony from K.R. and E.H. The social worker's reports were admitted in evidence, and, in the interest of efficiency, the court accepted an offer of proof as to appellant's testimony. It rendered its decision on the two petitions after considering written argument from the parties.

The juvenile court denied the requests for third parent recognition without prejudice, noting the legislative intent of section 7612, subdivision (c), supporting a third parent finding only in the rare case. The court did not consider the circumstances to be "truly unusual and exceptional" as opposed to the relatively common situation in which children are living with a stepparent who takes on a parental role in their daily lives. The juvenile court found that appellant and E.H. each met the statutory definition of a presumed parent with regard to the other's children under section 7611, subdivision (d), by receiving the other's children into their home and openly holding them out as their own. The court found the children already had two presumed parents, and under section 7612, subdivision (c), appellant and E.H. failed to show that recognizing only those parents would be detrimental to the children.

4

The juvenile court found "[no] present harm based on any relevant factors including the relationship and bond between the children and the parents"; and "the suggested instances of harm or detriment in the parties' briefs [were] hypothetical." It found detriment absent because the family was living as an intact unit, and granting third parent status to appellant and E.H. "would not change the status quo in the living arrangement." The G children's relationships with E.H. and the B children's relationship with appellant would continue in the same manner regardless of whether the petitions were granted. E.H. "already holds out [E.G.] and [S.G.] to be her son and daughter at school and doctor appointments"; "[E.H] is listed as a parent on their school contact sheets"; and appellant "already takes [G.B.] and [O.B.] to medical appointments." The court recognized the close bonds the children had formed with their parent's partner. The court explained that its decision "does not change any of that and it does not adversely impact the ability of the children and parents to continue to strengthen the bond."

A jurisdiction and dispositional hearing was held on the collective petitions. The court sustained allegations of failure to protect, undue risk of serious emotional damage, and abuse of sibling. All six children were declared dependents of the court. The G children continued in appellant's care under a supervised plan of family maintenance, with supervised visits authorized for K.R. The B children continued in E.H.'s care, and A.G. continued in the care of both parents with family maintenance services.

Appellant appealed from both third parent rulings and from the separate dispositional order as to A.G.[1] He filed an opening brief in this court and responded to our request for supplemental briefing regarding M.B.'s voluntary declarations of

---

[1] An open question exists as to whether a parentage determination is directly appealable in a dependency action. (*In re M.Z.* (2016) 5 Cal.App.5th 53, 62.) We exercise our discretion to treat the notices of appeal as timely from the subsequent dispositional orders. (Cal. Rules of Court, rule 8.406(d).) We will also dismiss the separate appeal from the November 2, 2020 dispositional order for A.G. (H048653), as appellant does not challenge that order in this court, notwithstanding his filing of a notice of appeal.

parentage, M.B.'s nonparticipation in the dependency proceedings, and the applicable standard of review. Consistent with its position in the trial court, the Department did not file a respondent's brief and has informed us that it takes no position regarding the parentage determinations. In response to our supplemental briefing request, the Department asks us to take judicial notice of the voluntary declarations of parentage for the B children filed with the Department of Child Support Services Parentage Opportunity Program, which were otherwise not part of the record on appeal, and we grant that request. No other parties to the dependency proceedings have participated in these appeals.

## II. DISCUSSION

The Uniform Parentage Act (§ 7600, et seq.) defines the " '[p]arent and child relationship' " as "the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." (§ 7601, subd. (b).) Parentage (formerly paternity) presumptions are set forth in section 7611, which states, "A person is presumed to be the natural parent of a child if the person meets the conditions provided in Chapter 1 (commencing with Section 7540) or Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions."[2] Subdivisions (a) through (c) of section 7611 relate to the marital relationship between the child's natural mother and the presumed parent. (§ 7611, subds. (a)–(c).) Under subdivision (d), which the juvenile court applied to appellant and E.H. in the context of their third parent requests, a person qualifies as a presumed parent who "receives the child into their home and openly holds out the child as their natural child." (§ 7611, subd. (d).)

_____

[2] Section 7540 establishes a conclusive marital presumption of parentage for spouses who cohabit at the time of a child's conception and birth, and sections 7570 through 7580 involve parentage voluntarily established by declaration following a child's birth.

6

The Uniform Parentage Act was amended in 2013 to allow courts to recognize more than two persons as a child's parents. "In an appropriate action, a court may find that recognizing only two parents would be detrimental to the child." (§ 7612, subd. (c); Stats. 2013, ch. 564, § 6.) A court considering a request for third parent recognition should, as a threshold matter, determine whether the movant can establish a claim to parentage under the Uniform Parentage Act. (*In re M.Z.*, *supra*, 5 Cal.App.5th at p. 66.) In determining detriment to the child from recognizing only two parents, the court is required to "consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (§ 7612, subd. (c).)

Section 1 of the 2013 act sets forth findings and declarations with regard to multi-parent determinations: "(a) Most children have two parents, but in rare cases, children have more than two people who are that child's parent in every way. Separating a child from a parent has a devastating psychological and emotional impact on the child, and courts must have the power to protect children from this harm. [¶]…¶] (c) This bill does not change any of the requirements for establishing a claim to parentage under the Uniform Parentage Act. It only clarifies that where more than two people have claims to parentage, the court may, if it would otherwise be detrimental to the child, recognize that the child has more than two parents. [¶] (d) It is the intent of the Legislature that this bill will only apply in the rare case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents." (Stats. 2013, ch. 564, § 1.)

## A. THE NO DETRIMENT FINDINGS

Appellant argues insufficient evidence supports the juvenile court's "no detriment" findings because there was "compelling," "overwhelming," and "irrefutable proof" that two parent findings would be detrimental to the B and G children. As

appellant failed to satisfy his burden of proof in the juvenile court, we understand him to argue that the evidence compels a finding in his favor as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"].) That would be the correct standard of review if the juvenile court's inquiry were limited to a purely factual determination, such as a presumed parentage finding under section 7611. (*R.M. v. T.V.* (2015) 233 Cal.App.4th 760, 780.) It also would apply to the denial of a request for third parent recognition where the challenge is based on insufficient evidence supporting the threshold section 7611 determination. (*In re M.Z.*, *supra*, 5 Cal.App.5th 53, 64–66; cf. *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1087–1094 [deciding as a matter of law that "an appropriate action" for a third parent finding under § 7612(c) requires an existing parent-child relationship; insufficient evidence supported detriment finding where putative third parent did not have an existing parent-child relationship with the child].)

Here, however, we are not asked to review presumed parent findings relating to the detriment question, because those findings were made in appellant's favor and are not challenged on appeal. We are reviewing the juvenile court's determination that maintaining the existing two-parent structure would not be detrimental to the children, which is a discretionary determination. The statute uses the permissive term "may" in its Legislative findings and declarations (a court "may, if it would otherwise be detrimental to the child, recognize that the child has more than two parents") and in subdivision (c) ("a court may find that two or more persons with a claim to parentage … are parents"). (Stats. 2013, ch. 564, §§ 1, 6.) The phrase "[i]n an appropriate case" in subdivision (c) also indicates a decision that is entrusted to the court's discretion, after considering all relevant factors. (Cf. *In re Jesusa V.* (2004) 32 Cal.4th 588, 606 [phrase "in an appropriate action" under subdivision (a) of section 7612 denotes trial court discretion; *Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 386 ["Whether a particular case is ' "an

8

appropriate action" in which to rebut the presumption of presumed parenthood ... is generally a matter within the discretion of the superior court' "].)

When a determination is "committed to the sound discretion of the juvenile court, … [that] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) A trial court abuses its discretion when its ruling is "whimsical, arbitrary, or capricious, i.e., that the trial court exceeded the bounds of reason," or where it "act[s] on a mistaken view about the scope of its discretion." (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.) Neither of those circumstances is shown on this record. We recognize, as did the juvenile court, the bonds between the children and their putative third parent. Nonetheless, we are bound in this case by a deferential standard of review. Applying that standard, the detriment asserted by appellant—that he would not have a legal right to the B children "[i]f anything were to happened to [E.H.]," and that E.H. could not provide a stable placement for the G children and protect them from K.R. "should anything happen to [appellant] in the future"—can be characterized as speculative and not reflecting existing circumstances or a tangible threat to familial bonds. Appellant and E.H. have been able to take the other's children to medical appointments, and the children's schools have recognized each as a parent to the other's children, without a third parent finding.

Appellant argues that "[e]ach child spoke to their fear that their functioning parents might split up and split the blended family up," and "this prospect is very worrisome in present day reality for these children." The children were interviewed by the social worker who reported that T.G., E.G., and the B children liked the idea of having appellant or E.H. as a third parent because they filled the role of their absent biological parent. T.G. said he would like there to be "legal arrangements that would permit him to remain in the care of [E.H.]" if appellant were taken into custody again. The B children supported the idea "even if" their mother "were to separate from"

9

appellant.  None of the children expressed concern or fear that a breakup was likely, or that the children's current living arrangement was unstable.

Even with the challenges the family faced in the months leading to the dependency proceedings, the G children's relationship with E.H. was not jeopardized.  The G children remained in the care of E.H. in late 2019 and early 2020 when a protective order was in place restraining appellant from E.H.  The G children also remained in her care after appellant was taken into custody in July 2020 on abuse charges stemming from the February incident involving E.G.  During the time E.G. lived with E.H.'s mother (following appellant's release from custody in September), E.H. visited E.G. daily.  By the time the juvenile court announced its decision, the criminal protective order as to E.G. had been modified to allow for peaceful contact, and E.G. had returned to appellant's care in the family home.  The G children were also not at risk of harm from K.R. because they had been removed from her custody and she was allowed only supervised visits.  The B children had also been removed from the custody of M.B.  According to the disposition report, "The children remain safe in the care of [appellant] and [E.H.], who are able to meet the children's needs for food and shelter.  They have the support of extended family members and are closely bonded with one another."

By denying the third parent requests without prejudice, the juvenile court recognized its authority to reconsider its findings should detriment actually manifest in the children's lives as a result of having only two parents.  (*In re J.P*. (2020) 55 Cal.App.5th 229, 239.)  The denials without prejudice also allow for future third parent requests to be directed to the Family Court after the dependency proceedings are concluded.  (§ 7630.)

## C. PARENTAGE PRESUMPTIONS

Appellant argues the juvenile court committed prejudicial error when it failed to weigh his presumption of parentage of the B children against the presumption arising

from M.B.'s voluntary declarations of parentage.[3]  Appellant did not assert a conflicting claim to parentage vis à vis M.B. in the juvenile court and has therefore forfeited the argument.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2.)  Indeed, he argued specifically that M.B.'s status as the presumed father of the B children based on voluntary declarations of parentage was *not* subject to statutory weighing, with which the juvenile court agreed.  Despite appellant's forfeiture and inconsistency, we exercise our discretion to address the new argument because these proceedings involve the well-being of children (*id*. at p. 1293), and no party claims prejudice from the argument not being presented to the juvenile court in the first instance.

Subdivision (b) of section 7612 instructs, "If two or more presumptions arise under Section 7611 that conflict with each other, ... the presumption that on the facts is founded on the weightier considerations of policy and logic controls."  The juvenile court found that appellant qualified as a presumed parent under section 7611, subdivision (d), by receiving the B children into his home and openly holding them out as his natural children.  According to the section 7612, the juvenile court had no occasion to weigh appellant's status against that of M.B. because M.B.'s judgment of parentage conclusively rebuts appellant's claim.  (§ 7612, subd. (d) ["Unless a court orders otherwise after making the [detriment] determination specified in subdivision (c), a presumption under Section 7611 is rebutted by a judgment establishing parentage of the child by another person."].)

M.B.'s status as the B children's presumed parent arises from voluntary declarations of parentage signed by M.B. and E.H. and filed with the Department of

---

[3]  Section 7573 was amended to its current gender-neutral form in 2018 (effective January 1, 2020) to recognize same-sex parents, transgender parents, and their children. (Stats. 2018, ch. 876, § 1.)  Formerly, section 7573 provided for "paternity" to be established by a voluntary declaration.  (Stats. 2011, ch. 185, § 1.)  Section 7573 now recognizes voluntary declarations of "parentage" rather than paternity.  (Stats. 2018, ch. 876, § 32.)  Although M.B.'s voluntary declarations predate the amendment and are therefore of "paternity," we use the current terminology throughout.

11

Child Support Services. A properly executed voluntary declaration of parentage filed with the Department of Child Support Services is "equivalent to a judgment of parentage of the child and confers on the declarant all rights and duties of a parent." (§ 7573, subd. (d); *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1137.) Because the detriment determination contemplated by section 7612, subdivision (c) was not made in this case, under section 7612, subdivision (d), M.B.'s parentage judgment forecloses appellant's parentage claim.

Several courts have reached the same conclusion. *In re Levi H.* (2011) 197 Cal.App.4th 1279, 1290, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7, held that a voluntary declaration of parentage, "which has the same force and effect as a paternity judgment," rebuts a presumption under section 7611, subdivision (d) as a matter of law. The statutory scheme mandates that "presumed fatherhood based on a voluntary declaration of paternity is not to be weighed against other section 7611 presumptions." (*Ibid.*; *Kevin Q. v. Lauren W.*, *supra*, 175 Cal.App.4th 1119, 1137 [same]; *In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1376 [parentage judgment from a child support proceeding precluded putative presumed father's section 7611(d) parentage claim]; *In re P.A.* (2011) 198 Cal.App.4th 974, 981– 982 [balancing required in dependency matter only where there is no preexisting parentage judgment]; *Barkaloff v. Woodward* (1996) 47 Cal.App.4th 393, 399 [presumption of parentage under section 7611(d) conclusively rebutted by prior stipulated judgment of parentage by another man].)

Appellant argues those cases do not apply here because they were decided before section 7612 was amended in 2013 to authorize courts to recognize more than two parents. The 2013 act recast former subdivision (c), which applied to the pre-2013 cases, as subdivision (d), which controls here. But the 2013 act did not change the presumptions that apply to competing claims of parentage, and the Legislature expressly declared that the act "does not change any requirements for establishing a claim to

12

parentage under the Uniform Parentage Act." (Stats. 2013, ch. 564, § 1.) The prefatory language in new subdivision (d) ("Unless a court orders otherwise after making the determination specified in subdivision (c)") merely acknowledges the court's authority to recognize more than two parents under new subdivision (c). (*Martinez v. Vaziri*, *supra*, 246 Cal.App.4th 373, 388 ["Unless the trial court has made a finding of detriment under section 7612, subdivision (c), evidence of a judgment establishing parentage by another person rebuts the section 7611 parentage presumption. (§ 7612, subd. (d).)"].) That provision does not authorize the court to redetermine parentage upon the denial of a third parent finding. (*In re P.A.*, *supra*, 198 Cal.App.4th 974, 982 [a " 'judgment acts to preclude the issue of paternity from being *redetermined*' "].)

Appellant's authorities do not persuade us otherwise. *In re E.O.* (2010) 182 Cal.App.4th 722, which concluded that the juvenile court was not required to recognize a man as a presumed father based on a child support parentage judgment, is distinguishable in two ways: First, it did not involve competing parentage claims to trigger the presumption afforded to a parentage judgment. (§ 7612, subd. (d) & former subd. (c).) Second, the judgment in *E.O.* did not arise from a voluntary declaration of parentage which confers presumed parent status as a matter of law under section 7611. Presumed parent status arises under that statute in circumstances which include a voluntary declaration of parentage that has not been rescinded or set aside. By including voluntary declarations of parentage among the ways to qualify as a presumed parent, the Legislature has distinguished those judgments from paternity judgments arising in other contexts. (*Cheyenne B.*, *supra*, 203 Cal.App.4th 1361, 1376–1377 [the Legislature omitted a paternity judgment as a way to qualify as a presumed father under section 7611, "even though [the Legislature] did include voluntary declarations of paternity, which are generally treated similarly to paternity judgments"].) We decline to adopt the reasoning of *In re Jovanni* (2013) 221 Cal.App.4th 1482 which followed the analysis of *In re Brianna M*. (2013) 220 Cal.App.4th 1025, cited by appellant here and in the juvenile

court despite being depublished by the California Supreme Court in 2014. (*In re Brianna M.*, review granted Feb. 11, 2014, S214955, review dismissed Aug. 13, 2014. See Cal. Rules of Court, rules 8.1105 and 8.1115.) The status of the *In re Brianna M.* opinion was also noted by the juvenile court.

Under section 7611, subdivision (d), a person must come forward to be adjudicated a presumed parent which creates a rebuttable presumption based on foundational facts. (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1410; *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652–1653.) In contrast to the nature of that presumption under section 7611, subdivision (d), presumed parent status based on a voluntary declaration of parentage is not rebuttable; it reflects a status conferred by operation of law. (§§ 7611, 7612, subd. (a).) In carrying out its duty to attempt to determine the parentage of each child who is the subject of a dependency petition, the juvenile court properly recognized the voluntary declarations of parentage filed by E.H. and M.B. as judgments of parentage with preclusive superiority over appellant's presumed parent status. (Welf. & Inst. Code, § 316.2; Cal. Rules of Court, rule 5.635(a), (c).)

### III.    DISPOSITION

The October 8, 2020 parentage orders are affirmed. Appeal No. H048653 is dismissed.

_____
Grover, J.

**WE CONCUR:**


_____
Greenwood, P. J.


_____
Danner, J.


H048552 - *In re T.G. et al.; Santa Clara County DFCS v. A.G*

H048772 - *In re G.B. et al.; Santa Clara County DFCS v. A.G*

H048653 - *In re A.G.; Santa Clara County DFCS v. A.G*